IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH J. POLERECKI, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. |
| | : |
| v. | : |
| | : (JURY TRIAL DEMANDED) |
| UMH PA CORP., d/b/a UNITED METHODIST HOMES, and BRAD PICCHINI, | : |
| | : |
| | : |
| | : (ELECTRONICALLY FILED) |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff Keith J. Polerecki, by and through his undersigned counsel, hereby complains of Defendants UMH PA Corp., d/b/a United Methodist Homes, and Brad Picchini (collectively, "Defendants"), as follows:

## INTRODUCTION

1.     Plaintiff brings this action to remedy Defendants' willful violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, which makes it unlawful for an employer to interfere with and/or retaliate/discriminate against employees for exercising their rights under the statute.

## **PARTIES**

2. Plaintiff Keith Polerecki ("Plaintiff") is a competent adult individual residing at 11 Dock Street, Pittston, PA 18640.

3. At all times relevant hereto, Plaintiff served as a protected and eligible employee under the FMLA and its governing regulations.

4. Defendant UMH PA Corp., d/b/a United Methodist Homes ("UMH"), is a business corporation, which maintains a place of business at 209 Roberts Road, Pittston, PA 18640, known as the Wesley Village Campus.

5. At all times relevant hereto, Defendant UMH served an "employer" as defined by the FMLA and its governing regulations.

6. Defendant Brad Picchini ("Picchini") is a competent adult individual who, at all times relevant hereto, was employed by Defendant UMH as the Plant Operations Supervisor and/or Maintenance Supervisor at its Wesley Campus. In that capacity, Defendant Picchini at all times had supervisory authority over Plaintiff, including control of Plaintiff's terms, conditions and/or privileges of employment.

7. At all times relevant hereto, Defendant Picchini served as an "employer" and a "person" as defined by the FMLA and its governing regulations and, therefore, is individually liable for the claims and damages asserted in this action.

8. At all times relevant hereto, Defendant UMH was responsible for the acts of its supervisory employees, including Defendant Picchini.

9. At all times relevant hereto, Defendants maintained, distributed and implemented an FMLA policy for their employees which allowed eligible employees to use FMLA leave for qualifying events.

## JURISDICTION AND VENUE

10. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

12. Plaintiff commenced full-time employment with Defendant UHM at its Wesley Village Campus in Pittston, PA in or around July, 2014, where he performed various tasks and/or services as part of the company's Plant Operations/Maintenance Department.

13. During his employment with Defendant UMH, Plaintiff continued to experience symptoms and/or episodic flare-ups from a previous severe burn injury, which required ongoing and regular treatment from his medical provider.

14. As a result, on or about November 5, 2015, Plaintiff requested intermittent leave under the FMLA, which was authorized and/or approved by Defendant UMH in or around the end of November, 2015.

15. After being notified of his approval under the FMLA, Defendant UMH -- through its Human Resources Department ("HR") -- directed Plaintiff to provide his FMLA paperwork to the head of his department, Defendant Picchini.

16. In accordance with that directive, Plaintiff attempted to provide Defendant Picchini with a copy of his FMLA paperwork.

17. In doing so, however, Defendant Picchini became visibly aggravated and frustrated when informed of Plaintiff's approved FMLA leave, and he flat out refused to accept the paperwork presented by Plaintiff.

18. Unsure of how to respond to the situation, Plaintiff immediately reported Defendant Picchini's refusal to accept said paperwork to UMH Campus Administrator, Mark Palma.

19. At that time, Mr. Palma contacted Defendant Picchini and advised him that he was obligated to accept Plaintiff's FMLA paperwork and approval.

20. Defendant Picchini responded by scheduling a meeting with Plaintiff, himself and a representative from HR the following morning at 8:00 a.m.

21. During the meeting, Defendant Pucchini continued to interfere with Plaintiff's approved FMLA leave by wrongfully demanding that Plaintiff provide him with a doctor's note every single time and/or day he utilized his intermittent leave, even though Plaintiff already provided Defendant UMH with the appropriate medical certification signed by his health care provider.

22. After conferring with his health care provider, Plaintiff reported back to Defendant Picchini that he was not obligated to provide a doctor's note for each use of his intermittent leave.

23. Although Defendant Picchini reluctantly agreed after looking up the issue online, he made it very clear to Plaintiff that he was not happy with Plaintiff's use of FMLA leave, and would continue to contest Plaintiff's use of said leave, including any re-certifications.

24. As set forth more fully below, Defendant Picchini continued to engage in a campaign of interference, discrimination and/or retaliation against Plaintiff resulting from Plaintiff's exercise of his protected rights under the FMLA.

25. Throughout the months of December, 2015 and January, 2016, Defendant Picchini closely followed, monitored and/or scrutinized Plaintiff's every move, and engaged in a series of adverse employment actions designed to discipline, single-out, discourage, humiliate and/or embarrass Plaintiff because he took the FMLA leave to which he was statutorily entitled.

26. In or around the first week of December, 2015, the HR Director for the Wesley Village Campus of UMH, Barbara Perlcok, provided Plaintiff with paperwork for him to read regarding his recently approved FMLA leave.

27. Although Plaintiff walked out of the office doing nothing more than reading the FMLA paperwork as instructed by Ms. Perlock, Plaintiff was

immediately written-up by Defendant Picchini for reading said paperwork in the office. Despite Plaintiff's repeated requests, Defendant Picchini wrongfully refused to provide Plaintiff with a copy of the write-up.

28. Defendant Picchini would also harass, discipline and/or write-up Plaintiff for other alleged incidents, all of which took place directly following, and/or shortly after, Plaintiff's return to work from an approved and/or qualified FMLA leave of absence.

29. On one of these occasions, Defendant Picchini yelled at, embarrassed and disciplined Plaintiff in front of others for simply getting a drink in the cafe after he felt dehydrated and light-headed from working in a hot room.

30. Within days of returning from another day of approved FMLA leave, Defendant Picchini further retaliated against and humiliated Plaintiff by making him clean up trash around the parking lot and dumpster, a task never performed by Plaintiff.

31. Defendant Picchini also gave Plaintiff a blueprint of the building and a high-lighter, and demanded that Plaintiff highlight everything he did so Defendant Picchini could closely track what Plaintiff was doing.

32. This was not demanded or required by Defendant Picchini prior to Plaintiff's approved FMLA leave, and Defendant Picchini did not thereafter demand or require this of any other similarly situated employee.

33. In addition to the foregoing, Defendant Picchini continuously followed Plaintiff around the grounds as he performed his tasks, and even started taking pictures of Plaintiff's work, which he had blown up and displayed on a table in the department for everyone to see.

34. Defendant Picchini also screamed, yelled and cursed at Plaintiff in front of co-workers about his use of FMLA leave, and also started confronting and questioning other co-workers about Plaintiff.

35. Defendant Picchini would also refuse to provide Plaintiff with any help and/or assistance for tasks that required the use of two (2) individuals.

36. While engaging in the aforesaid acts of retaliation, Defendant Picchini made multiple statements directly linking his actions to Plaintiff's use of his protected FMLA leave.

37. Defendant Picchini told Plaintiff that if he did not use FMLA he would have completed his tasks and, even more egregiously, told Plaintiff he was "killing" the company because of his days-off under the FMLA.

38. Defendant even referred to Plaintiff's use of FMLA leave as a "get out of jail free card".

39. During the work day, Defendant Picchini also called and harassed Plaintiff on his work phone and/or radio, constantly demanding to know Plaintiff's whereabouts and asking why he was taking so long performing a particular task.

40. When out on a qualified FMLA leave, Defendant Picchini would even call Plaintiff's personal cellphone to question the validity of his use of FMLA leave.

41. When doing so, Defendant Picchini -- in an angry tone -- told Plaintiff that his use of FMLA leave was "getting out of hand", "was getting ridiculous" and "had to stop".

42. Defendant Picchini would further state to Plaintiff: "Yesterday you're fine, today you're not, I don't understand".

43. Defendant Picchini's misconduct did not go unnoticed by other co-workers.

44. These individuals, however, told Plaintiff they were scared of Defendant Picchini and fearful of saying anything because they did not want to lose their jobs.

45. Plaintiff twice reported the aforesaid retaliatory actions of Defendant Picchini to Mr. Palma, the Campus Administrator, and/or Ms. Perlock, the Campus HR Director: the first by letter to Mr. Palma dated December 28, 2015; and the second by letter to Mr. Palma and Ms. Perlock dated January 7, 2016. (True and correct copies of the aforesaid letters are attached hereto and incorporated herein by reference as Exhibits "A" and "B", respectively).

46. As reflected in the January 7th letter, on January 5, 2016, Plaintiff

notified Defendant UMH that he was taking an FMLA leave the following day, January 6.

47. Plaintiff did so by calling and leaving two (2) voice messages with his superiors, including Defendant Picchini.

48. However, upon Plaintiff's return to work on January 7, 2016, Defendant Picchini confronted Plaintiff in front of others in the maintenance shop and falsely accused Plaintiff of not calling in to notify him of his absence the previous day.

49. Defendant Picchini also inappropriately questioned Plaintiff in front of everyone as to whether his absence was, in fact, FMLA related.

50. Despite Plaintiff's efforts to remedy the situation as aforesaid, no action was taken against Defendant Picchini, and his retaliatory/discriminatory actions as set forth more fully above continued and intensified.

51. In fact, on or about January 25, 2016, the first day back after use of a qualified FMLA absence, Defendant Picchini unexpectedly called Plaintiff into his office and terminated Plaintiff's employment at UMH.

52. When asked about the reason for his termination, Defendant Picchini cited to an incident wherein Plaintiff did nothing more than report misconduct of new co-worker.

53. At no time did Plaintiff engage in any misconduct or wrongdoing as it

related to the aforesaid incident involving his co-worker, and the use of this incident by Defendant Picchini for Plaintiff's termination was simply a pretext for Defendants' retaliation against Plaintiff for use of his protected leave under the FMLA as aforesaid.

### PLAINTIFF v. DEFENDANTS
### (Interference/Discrimination - Retaliation in Violation of the FMLA, 29 U.S.C. §§ 2601, *et seq*.)

54. Plaintiff incorporates the preceding paragraphs of this Complaint herein as if the same were set forth at length.

55. As referenced above, Plaintiff served as a protected and eligible employee entitled to FMLA leave, and Defendants served as an employer and/or a person, as defined under the FMLA and its governing regulations.

56. At all times relevant hereto, Plaintiff took advantage of his protected right to intermittent leave under the FMLA, which makes it unlawful for an employer to interfere with and/or discriminate/retaliate against employees for exercising their rights under the statute.

57. As set forth more fully above, Defendants interfered, retaliated and/or discriminated against Plaintiff in violation of the FMLA by taking a series of materially adverse actions against Plaintiff related to and/or motived by Plaintiff's exercise or attempted exercise of his protected right to FMLA leave, and by ultimately terminating Plaintiff for exercising his right to said leave under the

statute.

58. Indeed, Defendants at all times engaged in a course of conduct designed to discourage Plaintiff from taking and/or using his protected, authorized and/or approved FMLA leave, and/or at all times discriminated and/or retaliated against Plaintiff for using said leave in the manners set forth more fully above, including Defendants' ultimate decision to terminate Plaintiff's employment.

59. In doing so, Defendants failed to restore Plaintiff to the position of employment held by Plaintiff when leave commenced, and/or failed to restore Plaintiff to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment, as required under the statute after a qualified absence.

60. Defendants' actions and Plaintiff's ultimate termination would not have occurred but for Plaintiff's use of his protected FMLA leave, and the reason cited by Defendants for Plaintiff's termination was nothing more than a pretext to cover up for Defendants' interference and/or retaliatory actions as aforesaid.

61. Defendants' violations of the FMLA as aforesaid were willful, wanton, malicious and/or taken with a reckless/callous disregard for the rights and interests to which Plaintiff was statutorily entitled under the FMLA.

62. As a direct and/or proximate result of Defendants' willful violations of the FMLA as aforesaid, Plaintiff suffered actual damages, including lost wages

and employment benefits.

WHEREFORE, Plaintiff demands that judgment be entered in his favor and against Defendants, jointly and/or severally, and prays as follows:

a. For the entry of an order declaring Defendants in violation of the FMLA;

b. For an award of actual damages recoverable under the FMLA including, but not limited to, lost wages and employment benefits, together with interest;

c. For an award of liquidated damages recoverable under the FMLA, together with interest;

d. For an award of reasonable costs and attorneys' recoverable under the FMLA; and

e. For such other and further relief to which Plaintiff may be justly entitled to under the FMLA.

Respectfully submitted:

　/s/ Frank J. Tunis, Jr.
Frank J. Tunis, Jr.
**WRIGHT & REIHNER, P.C.**
148 Adams Avenue
Scranton, PA  18503
(570) 961-1166
(570) 961-1199 fax

Attorneys for Plaintiff

DATED:  April 18, 2016